**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **GARY JAMES CUMMINGS, #02147545** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  4:20cv531** |
| | § | |
| **DIRECTOR, TDCJ-CID** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

*Pro Se* Petitioner Gary James Cummings, an inmate confined in the Texas prison system,

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred

to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of

law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the

Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States

Magistrate Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Grayson County conviction, Cause No. 067700. On July 12,

2017, a jury found Petitioner guilty of evading arrest or detention, enhanced by two prior

convictions, and that he used a deadly weapon. (Dkt. #15-32, pp. 21-25). The trial court found the

enhancements true and sentenced Petitioner to thirty years' confinement. (Dkt. #15-32, p. 21).

Petitioner appealed his conviction, which was affirmed on July 31, 2018. *Cummings v.

State*, No. 05-17-00852-CR, 2018 WL 3629105 (Tex. App. July 31, 2018) (Dkt. #15-3). Petitioner

filed a petition for discretionary review ("PDR") (Dkt. #15-12), which the Texas Court of Criminal

Appeals ("TCCA") refused on December 19, 2018. Case Number PD-0935-18; *see also*

*Cummings*, No. 05-17-00852-CR, 2018 WL 3629105.

Petitioner filed an application for state habeas corpus relief on July 8, 2019. (Dkt. #15-32, pp. 26-52; Dkt. #15-33, pp. 1-4). On October 21, 2019, the state habeas court adopted the "memorandum, findings of fact, and conclusion of law as its own" and, based on those findings of fact and conclusions of law, ordered that Petitioner's application be denied. (Dkt. #25-33, pp. 46-62). On February 19, 2020, the TCCA denied the application without a written order on the findings of the state habeas court without a hearing and on the court's independent review of the record. (Dkt. #15-28).

Petitioner filed the original petition on July 7, 2020 (Dkt. #1), and an amended petition (Dkt. #8) on August 13, 2020.[1] In the amended petition, Petitioner asserts the following claims for relief:

1.    There was insufficient evidence presented to support the deadly weapon finding.

2.    The trial court erred by allowing the State to admit evidence of previous convictions that were over ten years old.

(Dkt. #8, pp. 5-7). The Director filed a response, arguing that Petitioner's claims are without merit. (Dkt. #14). Petitioner filed a reply. (Dkt. #16).

## II.  FACTUAL BACKGROUND

The Fifth District Court of Appeals set out the facts as follows:

On November 24, 2016, at approximately 1:45 a.m., Officer Dennis Marshall observed a vehicle rapidly approach an intersection and turn so quickly that he could hear the tires squeal. When Marshall observed the same vehicle fail to stop at a stop sign, he activated his emergency lights and attempted to stop the vehicle. However, the vehicle did not stop. Instead, the driver, later identified as Cummings, "disregarded stopping at" another stop sign and proceeded to drive in a "very rapid manner." After making a few turns, the vehicle failed to yield at a caution light[1] that permitted drivers in the opposite direction to have the right of way. Marshall

---

[1] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998).

observed that a vehicle, traveling in the opposite direction, "was able to pull over a little bit and slow down" avoiding any possibility of a collision.

> [FN1] The record also refers to the caution light as "blinking red lights."

Marshall continued to follow the vehicle. Then, while the vehicle was still in motion, Cummings crawled out the front driver's-side window and began running away from Marshall's patrol car. After Cummings left the vehicle, Marshall saw that the vehicle "had gone up on the curb," but did not strike another vehicle. Still driving his patrol car, Marshall continued to follow Cummings who was on foot. Cummings ran to a residence and attempted to enter it. Marshall observed Cummings grab the door knob and put his right shoulder to the door, trying to force it open. At this point, Marshall parked his patrol car and began to chase Cummings on foot, shouting out numerous, clear commands to Cummings to stop and lay on the ground. Cummings continued to run and tried to enter another house. Then, Marshall attempted "to remove [Cummings] from the porch of [the second] residence," but Cummings grabbed onto the handrail and would not let go. Marshall heard Cummings say something to the effect that Grayson County was trying to kill him. Once Marshall "was able to free [Cummings] from the handrail and get him down into the [front] yard" of the residence, they began to wrestle. Eventually, Marshall used his taser, but it was ineffective. Two additional officers arrived to help. They both heard Cummings yelling, "Don't kill me!" After wrestling for a short period of time, the three officers succeeded in handcuffing Cummings.

Cummings was indicted for the offense of evading arrest or detention while using a deadly weapon. The indictment alleged two prior convictions[2] for the purpose of enhancing his punishment. Cummings asserted the affirmative defense of necessity, based on his claim that he was suffering from "medical paranoia."[3] He testified on his own behalf at trial. The jury found Cummings guilty and that he used a deadly weapon. The trial court found the enhancements true and assessed his punishment at thirty years of imprisonment.

> [FN2] The two prior convictions alleged in the indictment were for the offenses of: (1) evading arrest or detention with a motor vehicle; and (2) receiving, possessing, or concealing stolen property.

> [FN3] It was Cummings's theory at trial that he evaded arrest or detention because some prescription medication he was taking caused him to become paranoid and believe the police were trying to kill him. It was the State's theory that, although Cummings was paranoid, the cause of his paranoia was methamphetamine use and the defense of "necessity" was inappropriate.

*Cummings*, No. 05-17-00852-CR, 2018 WL 3629105, at **1-2 (Dkt. #15-3, pp. 2-3).

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d

441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)). Where, as here, "the state habeas court and trial court are one in the same," the presumption of correctness afforded the state habeas court's factual determinations is "especially strong." *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (citations omitted).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable

presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Furthermore, the TCCA's refusal of a PDR or silent denial of relief constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472.

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court recently explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, ___ U.S. ___, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV.  ANALYSIS

### I.    <u>Sufficiency of the Evidence (Claim One)</u>

In Claim One, Petitioner contends that the evidence is legally insufficient to support the deadly weapon finding. (Dkt. #8, p. 5).

Claims of "no evidence" or insufficient evidence to support a conviction are reviewed under the legal-sufficiency standard set out in *Jackson v. Virginia*. This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000); *Norris v. Davis*, 826 F.3d 821, 833 (5th Cir. 2016). This standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Dupuy*, 201 F.3d at 589 (quoting *Jackson*, 443 U.S. at 324 n.16). As a result, a federal habeas court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claims of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991). Consideration of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of witnesses, as those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985). All credibility choices and conflicting inferences

are to be resolved in favor of the jury's verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994). A federal habeas court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Marler*, 777 F.2d at 1012; *Alexander v. McCotter*, 775 F.3d 595, 598 (5th Cir. 1985). Moreover, where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). As stated by the Supreme Court:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ___, 130 S. Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Petitioner raised a sufficiency of the evidence claim on direct appeal. The Fifth Court of Appeals considered the issue and found the evidence to be sufficient under *Jackson*:

## II. SUFFICIENCY OF THE EVIDENCE

> In his first issue on appeal, Cummings argues the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon during the evading arrest or detention offense. He claims the evidence does not show that an individual was placed in actual danger of serious bodily injury or death. Rather, the evidence supports only a hypothetical danger. The State responds that Cummings's "manner of using his motor vehicle posed a danger to pursuing officers and other motorists that was more than simply hypothetical."

### A. Standard of Review

When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *State v. Bolles*, 541 S.W.3d 128, 133-34 (Tex. Crim. App. 2017); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). An appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017); *Brooks*, 323 S.W.3d at 899. All evidence, whether properly or improperly admitted, will be considered when reviewing the sufficiency of the evidence. *See McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam); *Lockhart v. Nelson*, 488 U.S. 33, 41-42 (1988); *Jackson*, 443 U.S. at 319.

### B. Applicable Law

Section 38.04 of the Texas Penal Code provides a person commits the offense of evading arrest or detention if he "intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a) (West 2016). Evading arrest or detention can constitute a misdemeanor, a state-jail felony, a third-degree felony, or a second-degree felony depending on the manner in which the offense is committed. *See* PENAL § 38.04. If a person uses a vehicle while in flight and has been previously convicted of evading arrest or detention, the offense is a third-degree felony. *See* PENAL § 38.04.

"In any felony offense in which it is 'shown' that the defendant 'used or exhibited [a] deadly weapon[,]' the trial court 'shall' enter a deadly weapon finding in the judgment." *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017); *see* TEX. CODE CRIM. PROC. ANN. art. 42A.054(c) (West 2018). "Such a deadly weapon finding impacts a convicted felon's eligibility for community supervision, parole, and mandatory supervision." *Moore*, 520 S.W.3d at 908.[4]

> [FN4] *See, e.g.*, CRIM. PROC. art. 42A.054(b)(1) (judge-ordered community supervision does not apply when there is deadly weapon finding); TEX. GOV'T CODE ANN. §§ 508.145(d) (not eligible for release on parole until inmate's actual calendar time served, without consideration of good conduct time, equals one-half of sentence or 30 calendar years, whichever is less, but in no event is inmate eligible for release on parole in less than two calendar years), 508.149(a)(1) (inmate may not be released to mandatory supervision), & 508.151(a)(2) (parole panel may set presumptive parole date if inmate never had conviction with affirmative deadly weapon finding) (West Supp. 2017).

In order to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and (3) other people were put in actual danger. *See Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Expert or lay testimony may support a deadly weapon finding. *See Tucker v. State*, 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008).

The Texas Penal Code defines a "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." PENAL § 1.07(a)(17) (West Supp. 2017). An automobile is not a deadly weapon per se as it is not manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. *See Moore*, 520 S.W.3d at 908; *Pruett v. State*, 510 S.W.3d 925, 928 (Tex. Crim. App. 2017); *Brister*, 449 S.W.3d at 494; *see also* PENAL § 1.07(a)(17)(A). However, an automobile may, in the manner of its use or intended use, be capable of causing death or serious bodily injury. *See Moore*, 520 S.W.3d at 908; *Brister*, 449 S.W.3d at 494; *Drichas*, 175 S.W.3d at 798; *see also* PENAL § 1.07(a)(17)(B).

Appellate courts evaluate the manner in which the defendant used the motor vehicle during the felony. *See Moore*, 520 S.W.3d at 910 (discussing *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009)). When evaluating the manner of use, appellate courts consider whether the defendant's driving was reckless or dangerous during the commission of the felony. *See Moore*, 520 S.W.3d at 910 (discussing *Sierra*, 280 S.W.3d at 255). No intent to use the automobile as a weapon need be shown. *See Moore*, 520 S.W.3d at 909-10 (discussing *Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995) and *Drichas*, 175 S.W.3d at 798).

To sustain a deadly weapon finding requires evidence that "others" were endangered, and not merely a hypothetical potential for danger if others had been present. *See Moore*, 520 S.W.3d at 909. "Others" connotes individuals other than the actor himself, so danger to the actor alone does not meet the requisite standard of deadly weapon use. *See Brister*, 449 S.W.3d at 494. Also, evidence may be sufficient to support a deadly weapon finding in the absence of any evidence that either death or serious bodily injury occurred. *See Moore*, 520 S.W.3d at 909 (discussing *Mann v. State*, 58 S.W.3d 132 (Tex. Crim. App. 2001)).

### C. Application of the Law to the Facts

Cummings does not dispute that a motor vehicle can meet the definition of a deadly weapon. Accordingly, we will evaluate the manner in which Cummings used the motor vehicle during the felony and then, consider whether the evidence shows that other people were put in actual danger during the felony.

First, we evaluate the manner in which Cummings used the motor vehicle during the felony. *See Moore*, 520 S.W.3d at 910 (discussing *Sierra*, 280 S.W.3d at 255). Cummings was indicted for the offense of evading arrest or detention, while using a motor vehicle. Also, the indictment alleged two prior convictions, one of which was for evading arrest. As a result, the alleged offense with which he was charged in this case was a third-degree felony offense. *See* PENAL § 38.04. To evaluate the manner of Cummings's use of the motor vehicle, we consider whether Cummings's driving was reckless or dangerous during the commission of the felony. *See Moore*, 520 S.W.3d at 910 (discussing *Sierra*, 280 S.W.3d at 255).

We begin our analysis by noting that there are things that the record in this case does not reveal. *See Moore*, 520 S.W.3d at 912 (acknowledging what the record does not reveal, but noting there is other evidence to support deadly weapon finding). The record does not contain evidence of the speed at which Cummings was driving. Marshall admitted that he was not using radar and did not "clock" Cummings's speed, but stated that Cummings was traveling at an "unsafe speed" and "low speed" in an urban area and referred to the events as a "slow speed chase." The evidence shows that Cummings slowed down at the stop signs, but did not stop. However, Marshall believed Cummings slowed down only to make a turn at the intersection.

The record reveals other evidence that the manner in which Cummings used or intended to use the motor vehicle was capable of causing death or serious bodily injury. *See Moore*, 520 S.W.3d at 912. The record shows that Marshall observed Cummings rapidly approach an intersection and turn so quickly that he could hear the tires squeal, fail to stop at two stop signs, drive in a "very rapid manner," ignore a caution light, and crawl out the front driver's-side window while the vehicle was still in motion, causing the vehicle to go "up on the curb." We conclude, regardless of whether Cummings intended to use the motor vehicle as a weapon, a reasonable fact finder could infer that the manner in which Cummings used the motor vehicle while evading arrest or detention was reckless and dangerous. *See Moore*, 520 S.W.3d at 909-10 (appellate courts consider whether defendant's driving was reckless or dangerous and no intent to use automobile as a weapon need be shown).

Second, to sustain the deadly weapon finding, the evidence must show that others were endangered, and not merely a hypothetical potential for danger if others had been present. *See Moore*, 520 S.W.3d at 909. Although the record shows that there was no evidence that there were other vehicles present at the first and second stop signs that Cummings failed to obey, the record reveals evidence that "others" were endangered. *See Moore*, 520 S.W.3d at 912. The record shows that after making a few turns while driving, Cummings ignored a caution light that permitted drivers in the opposite direction to have the right of way. Marshall saw that a vehicle traveling on the same street as Cummings, but in the opposite direction, was able "to pull over a little bit and slow down" avoiding any possibility of a collision. We conclude the record reflects "others" were present and the manner in which Cummings used his motor vehicle placed those "others" in danger of death or

11

serious bodily injury. Even though no collision occurred, a reasonable fact finder could infer that there was actual danger to the driver and any passengers in the other vehicle. *See Moore*, 520 S.W.3d at 909 (discussing *Mann*, 58 S.W.3d 132) (evidence may be sufficient to support deadly weapon finding in absence of any evidence that either death or serious bodily injury occurred).

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to support the jury's deadly weapon finding. Issue one is decided against Cummings.

*Cummings*, No. 05-17-00852-CR, 2018 WL 3629105, at **2-4 (Dkt. #15-3, pp. 3-8).

Petitioner argued this issue in his PDR (Dkt. #15-12), which the TCCA refused. Case Number PD-0935-18; *see also Cummings*, No. 05-17-00852-CR, 2018 WL 3629105. The TCCA's refusal of the PDR constitutes a denial of relief on the merits. *See Singleton*, 178 F.3d at 384. Furthermore, the denial is presumed to rest upon the same grounds articulated by the Fifth Court of Appeals in rejecting Petitioner's claim on direct appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Thus, the Fifth Court of Appeals' decision is "the last reasoned opinion" on the issue. *See id.* at 804. In applying the AEDPA standards, federal courts apply the last reasoned state court decision on a claim. *Id.* at 803; *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014).

The Fifth Court of Appeals thoroughly reviewed the evidence, properly applied the *Jackson* standard, and found that the evidence was sufficient to support the jury's deadly weapon finding. As described by the Fifth Court of Appeals, a rational jury could have drawn inferences from the evidence which resulted in the conclusion that Petitioner used his motor vehicle as a deadly weapon during the commission of the crime. Petitioner complains that the Fifth Court of Appeals based its opinion on trial testimony and must not have reviewed the video of the incident because had the court reviewed it, the court would not have found that Petitioner used his vehicle as a deadly weapon. (Dkt. #16, pp. 4-6). The video was admitted into evidence and played for the jury, and Officer Marshall testified at trial as to what he was seeing on the video. (Dkt. #15-18, pp. 124-

53). The weight to be given the video evidence and trial testimony was the sole province of the jury; it was not for the appellate court to reweigh the evidence. Petitioner's claim that the evidence is insufficient to support the deadly weapon finding based on the video evidence is simply a disagreement with the fact-finder's resolution of alleged conflicts in the evidence, and as such, is foreclosed by settled principles of appellate review. *See United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir.1999) (in reviewing sufficiency of the evidence, a court "must accept credibility choices that support the jury's verdict, and . . . may not reweigh the evidence."). Although the jury could have drawn inferences in Petitioner's favor and returned a finding of not guilty, *Jackson* requires that inferences be drawn in favor of the verdict when a challenge to the sufficiency of the evidence is asserted.

Affording due respect to the role of the jury and the state courts, the Court finds that the evidence at Petitioner's trial was not nearly sparse enough to sustain a due process challenge under *Jackson*. The evidence was sufficient under Texas law to convict Petitioner of evading arrest or detention and to find that he used a deadly weapon. Above all, Petitioner has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Williams*, 529 U.S. at 402-03; *Childress v. Johnson,* 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner has failed to show that the state court decision was objectively unreasonable. *See Johnson*, 566 U.S. at 651. Accordingly, Claim One should be denied.

II.    **Prior Convictions (Claim Two)**

In Claim Two, Petitioner asserts that the trial court erred by allowing the State to admit evidence of prior convictions that were over ten years old.

As previously stated, Petitioner testified at trial and asserted an affirmative defense of necessity, based on his claim that he was suffering from "medical paranoia." The trial court allowed the State to admit for impeachment purposes evidence of some of Petitioner's prior convictions that were over ten years old, finding that those offenses "directly deal[t] with credibility or crimes of moral turpitude." (Dkt. #15-19, p. 35). When the prior conviction evidence was introduced, the trial court gave a limiting instruction:

> Ladies and gentlemen, in general, prior extraneous offenses, other than what the defendant is charged with in this case, would not be admissible. But in certain circumstances, it is admissible. It can be admitted for a purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>
> It can also be admitted if a person is testifying. A person—testimony of a witness may be impeached by showing that the witness has previously been convicted of a felony offense or a misdemeanor offense involving moral turpitude. That evidence is admissible only for the purpose of assisting you, if it does, in determining the credibility of the defendant and the weight to be given his testimony.
>
> Any such conviction evidence, if any, shall not be considered by you as evidence deciding any other issue before you in the trial of this case. But, it is admissible for limited purposes, and you'll also see that in the Charge at the end when I give you the legal instructions. That same instruction will be in there.

(Dkt. #15-19, pp. 43-44). At the close of the evidence, the trial court again instructed the jury:

> You are instructed that certain evidence was admitted in evidence before you in regard to the defendant's having been charged and convicted of offenses other than the one for which he is now on trial. Such evidence cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the weight you will give his testimony, and you will not consider the same for any other purpose.

(Dkt. #15-19, p. 119).

14

Texas Rule of Evidence 609(b) provides that a conviction older than ten years is admissible for impeachment purposes only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. The burden is on the prosecution to offer specific facts and circumstances. In addition, Rule of Evidence 609(a) subjects all prior convictions to a balancing test that weighs their probative value against their prejudicial effect.

On direct appeal, Petitioner raised trial court error regarding the admission of the prior convictions, as well as the admission of evidence of his methamphetamine use. The Fifth Court of Appeals considered the issue as follows:

### III. EVIDENCE OF PRIOR CONVICTIONS AND EXTRANEOUS OFFENSES

In issue two, Cummings argues the trial court erred when it overruled his objection to the admission of evidence relating to extraneous conduct and prior convictions because: (1) the evidence of his methamphetamine use was inadmissible under Texas Rule of Evidence 404(b) because it was not offered for a permissible purpose or relevant; and (2) the evidence of his prior convictions was inadmissible under Texas Rule of Evidence 609 because more than ten years had passed since his conviction for some of the offenses and the probative value of his prior convictions was outweighed by their prejudicial effect. Cummings claims that, although he and the State disagreed as to the cause of his paranoia, the cause was not relevant to or probative of the elements of his necessity defense or the deadly weapon issue. The State responds that the evidence showing Cummings's paranoia was more consistent with methamphetamine use than the prescription medications Cummings claimed caused his paranoia was permissible to rebut Cummings's defensive theory. Also, the State responds that Cummings's affirmative defense of necessity relied solely on his credibility, so his prior convictions for crimes of moral turpitude were relevant.

However, we need not address the merits of Cummings's complaint. Rather, assuming, without deciding, the trial court erred when it overruled Cummings's objection to the admission of the State's rebuttal evidence that his paranoia was the result of methamphetamine use, not prescription medication, we will review the record to determine whether the alleged error was harmful error. *See Werner v. State*, 412 S.W.3d 542, 547 (Tex. Crim. App. 2013) (neither defendant nor State bears burden of demonstrating harm); *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001) (neither the State nor appellant must demonstrate harm when an error has occurred; it is appellate court's duty to assess harm); *Taylor v. State*, 93

S.W.3d 487, 503 (Tex. App.—Texarkana 2002, pet. ref'd) (noting parties may suggest how such harm is shown or not shown).

### A. Non-Constitutional Error

The erroneous admission of evidence is non-constitutional error. *See Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008). Pursuant to rule 44.2(b), "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Gonzalez*, 544 S.W.3d at 373; *Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011). If the error did not influence the jury or had but a slight effect, the error is harmless. *See Gonzalez*, 544 S.W.3d at 373; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). An appellate court should examine the record as a whole when conducting a harm analysis. *See Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002). When conducting a harm analysis, an appellate court should consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error. *See Gonzalez*, 544 S.W.3d at 373 (citing *Motilla*, 78 S.W.3d at 356-58).

### B. Affirmative Defense of Necessity

Necessity is a statutory justification defense that is raised for purposes of exonerating a person's otherwise illegal conduct. *See* PENAL § 9.22 (West 2011); *Stefanoff v. State*, 78 S.W.3d 496, 500 (Tex. App.—Austin 2002, pet. ref'd). Justification defenses, including necessity, are based on the confession-and-avoidance doctrine, which requires a defendant to admit the conduct—both the act or omission and the requisite culpable mental state—of the charged offense. *See Juarez v. State*, 308 S.W.3d 398, 401-04 (Tex. Crim. App. 2010) (discussing confession-and-avoidance doctrine with respect to affirmative defenses of necessity, self-defense, and Good-Samaritan defense).

Conduct is justified by necessity if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

16

PENAL § 9.22; *see Stefanoff*, 78 S.W.3d at 500.

A necessity defense requires that the defendant reasonably believe that his conduct is immediately necessary to avoid a greater harm. *See* PENAL § 9.22; Mays v. State, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010). A "reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances. *See* PENAL § 1.07(42); *Mays*, 318 S.W.3d at 385; *see also Harper v. State*, 508 S.W.3d 461, 467-68 (Tex. App.—Fort Worth 2015, pet. ref'd); *Rodriquez v. State*, No. 13-16-00396-CR, 2018 WL 2252882, at *5-6 (Tex. App.—Corpus Christi May 17, 2018, no pet. h.) (mem. op., not designated for publication). A defendant's claim that his "paranoid ideations" raise a reasonable belief that his actions were justified is not supported by "law or common sense." *See Mays*, 318 S.W.3d at 385 ("[Defendant's] claims that 'his paranoid ideations and psychosis' raise a 'reasonable belief' that his actions were justified is supported neither by law nor common sense."); *see also Rodriguez*, 2018 WL 2252882, at *5-6. Texas law does not recognize the "ordinary and prudent" paranoid for purposes of penal code justification defenses. *See Mays*, 318 S.W.3d at 385; *see also Jackson v. State*, 160 S.W.3d 568, 572 (Tex. Crim. App. 2005) (evidence of defendant's paranoia, presented as excuse for crime, simply provides motive for intentional act of murder); *Harper v. State*, 508 S.W.3d 461, 467-68 (Tex. App.—Fort Worth 2015, pet. ref'd) (defendant's belief it was necessary to shoot person due to generalized fear and confusion after collision, which other evidence showed was due to drug use, was unreasonable as matter of law); *Rodriguez*, 2018 WL 2252882, at **4-6 (trial court did not err in excluding testimony of psychologist that defendant suffered from delusional disorder to support self-defense and to negate mens rea in murder case); *cf. Ruffin v. State*, 270 S.W.3d 586, 596-97 (Tex. Crim. App. 2008) (expert evidence of defendant's paranoid delusions admissible as it related to defendant's intent to shoot at police officers, unless otherwise barred by evidentiary rules).

The defendant has the initial burden of producing evidence regarding the necessity defense. *See* PENAL § 2.03(c) (West 2011); *Stefanoff*, 78 S.W.3d at 500. If the defendant makes this initial showing, then the burden shifts to the State to disprove the necessity defense beyond a reasonable doubt. *See* PENAL § 2.03(d); *Stefanoff*, 78 S.W.3d at 500.

### *C. Application of the Law to the Facts*

Because Cummings admitted all of the elements of the evading arrest or detention offense by asserting an affirmative defense, the only issues at trial were his defense of necessity and the alleged use of a deadly weapon. Also, the record shows that the parties agreed that Cummings was suffering from paranoia during the offense of evading arrest.[5] However, the State and Cummings disagreed as to the cause of his paranoia. Cummings claimed that he was acting under a "medical state of paranoia," which was a side effect of some legally prescribed medications.

According to Cummings, he evaded arrest because he believed the police were trying to kill him. The State rebutted this evidence with: (1) expert testimony that the specific medications prescribed to Cummings were unlikely to cause "delusions or hallucinations"; (2) expert testimony that Cummings's "paranoia" was consistent with methamphetamine use; and (3) evidence that Cummings had admitted to using methamphetamine.

> [FN5] On appeal the State argues that it did not concede Cummings was suffering paranoid delusions at the time of the offense. However, during closing argument, the State argued:
>> The facts of [Cummings's] behavior that night on 11-24-16 are consistent with methamphetamine use. No doubt about it, [ ] Cummings was in a weird state of mind that night. I'm not disputing that. There was something that wasn't right with him. . . . Irrational and paranoid behavior. Irrational and paranoid behavior is a classic symptom of methamphetamine. . . . Methamphetamine makes you paranoid and delusional.

The evidence of Cummings's paranoia may provide a motive for his intentional act of evading arrest. *See Jackson*, 160 S.W.3d at 572 (evidence of paranoia simply provided motive for murder and did not provide excuse for intentional act). However, Cummings argues that his paranoia raises a "reasonable belief" that his actions were justified is supported "neither by law nor common sense." *See Mays*, 318 S.W.3d at 385-86 (self-defense based upon "paranoid ideations and active psychosis" not recognized defense in Texas); *see also Rodriquez*, 2018 WL 2252882, at *4-6 (trial court did not err in excluding testimony of psychologist that defendant suffered from delusional disorder as basis for self-defense and to negate mens rea in murder case). Necessity based upon paranoia is not a recognized defense in Texas. *See Mays*, 318 S.W.3d at 385-86; *see also Rodriquez*, 2018 WL 2252882, at *4-6.

We conclude that, even if the trial court erred when it overruled Cummings's objection to the evidence of his extraneous conduct and prior convictions to rebut his affirmative defense of necessity, Cummings was not harmed by the error because, as a matter of law, Cummings's belief that it was necessary to evade arrest because the police were trying to kill him, allegedly induced by prescription medication, does not satisfy the requirement that he reasonably believed his conduct was immediately necessary to avoid a greater harm. *See Mays*, 318 S.W.3d at 385-86; *see also Harper*, 508 S.W.3d at 468; *Rodriquez*, 2018 WL 2252882, at *4-6.

Issue two is decided against Cummings.

*Cummings*, No. 05-17-00852-CR, 2018 WL 3629105, at **4-7 (Dkt. #15-3, pp. 8-13).

18

Petitioner did not raise this issue in his PDR (Dkt. #15-12). When he raised it in his state habeas application (Dkt. #15-33, p. 48, ¶ 9), the state habeas court stated that the claim could have been raised on direct appeal (Dkt. #15-33, p. 48, ¶ 12) and noted that issues "which should have, and could have, been raised on direct appeal cannot be raised under Habeas Corpus" (Dkt. #15-33, p. 59, ¶ 8). This claim is arguably procedurally barred. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (failure to present claims in a petition for discretionary review will procedurally default them; that is, presentation in a petition for discretionary review is necessary); *Steele v. Davis*, 707 F. App'x 811, 811 (5th Cir. 2018) (per curiam) (concluding the claim was unexhausted because it was not raised in a petition for discretionary review); *Brown v. Quarterman*, No. CIV.A.3:05-CV-1026-P, 2008 WL 170329, at *3 (N.D. Tex. Jan. 18, 2008) ("By failing to timely present such claims in a petition for discretionary review, Brown has procedurally defaulted the claims under Texas law."). The Director, however, addresses the claim on the merits, without arguing that it is procedurally barred. As such, the Court will forego a procedural default analysis and proceed to the merits of the claim.

Trial court errors must do more than affect the verdict to warrant relief in habeas cases—it must render the trial as a whole fundamentally unfair. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). To determine whether an error by the trial court rendered the trial fundamentally unfair, it must be determined if there is a reasonable probability that the verdict would have been different had the trial been conducted properly. *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). The United States Supreme Court has held that a federal harmless error standard applies on federal habeas review of state court convictions. *Brecht*, 507 U.S. at 637-38. The test is whether the error had "substantial and injurious effect" or influence in determining the jury's verdict. *Id.* 507 U.S. at 637. Habeas petitioners are not entitled to habeas relief based on trial error unless they

can establish that it resulted in actual prejudice. *Id.* In sum, habeas petitioners may not prevail in a federal habeas action simply by showing a violation of state law—they must show that the trial was fundamentally unfair, thus denying them due process by prejudicing the outcome of the trial. *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1987).

The Court finds that Petitioner has failed to show that the trial was fundamentally unfair. "The danger inherent in the admission of prior convictions is that juries may convict a defendant because he is a 'bad man' rather than because evidence of the crime of which he is charged has proved him guilty." *Thomas v. Estelle*, 587 F.2d 695, 698 (5th Cir. 1979) (citing *Michelson v. United States*, 335 U.S. 469, 475-76 (1948)). In the present case, Petitioner admitted to the evading charge, and the trial court instructed the jury to consider the evidence of Petitioner's prior convictions for crimes of moral turpitude only as it concerned Petitioner's credibility, which was placed at issue because Petitioner asserted a necessity defense and testified at trial. Texas juries are presumed to follow the trial court's instructions in the manner presented, and a reviewing court will abandon this presumption only if there is evidence showing the jury did not follow the instructions. *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996); *see also Greer v. Davis*, No. 2:14-CV-198, 2017 WL 3225988, at *10 (N.D. Tex. June 30, 2017), *report and recommendation adopted*, No. 2:14-CV-198, 2017 WL 3263130 (N.D. Tex. July 27, 2017). "While an instruction does not entirely foreclose possible misuse of evidence by the jury, it does direct the jury in the proper manner in which it should interpret what could be highly prejudicial and incriminating evidence." *Greer*, No. 2:14-CV-198, 2017 WL 3225988, at *10. Moreover, as found by the Fifth Court of Appeals, Petitioner was not harmed by any trial court evidentiary error because necessity based upon paranoia is not a recognized defense in Texas. The Texas courts applied the state's evidentiary rules and body of relevant case law and did not do so in a manner

that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on Claim Two.

## V. CONCLUSION

Petitioner fails to show that his claims have merit. Specifically, Petitioner fails to demonstrate that the evidence was insufficient under Texas law to support a finding that Petitioner used his vehicle as a deadly weapon during the commission of the felony. Petitioner also fails to show that his trial was fundamentally unfair. Above all, Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a

substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended the Court find that Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 27th day of March, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE